THEODORE THOMAS, Respondent, *v.* THE MUSICAL MUTUAL PROTECTIVE UNION, Appellant.

*It seems* the remedy to restrain and punish corporations for illegal conduct in the exercise of privileges or franchises not conferred by law, is by an action by the attorney-general to suspend their functions or annul their charters.

*It seems,* also, that generally this or a criminal prosecution is the only mode of redress open to individuals for injuries occasioned to them by unlawful combinations of others engaged in similar employment with a view of influencing and controlling the business, and injuring or embarrassing the prosecution thereof, by those not assenting or joining in the combination.

It is only when some injury has been inflicted on the person, or some individual right of property has been invaded, destroyed or prejudiced by the action of a corporation that an action by the individual is maintainable.

Courts are confined in legal actions to real controversies wherein the legal rights of parties are necessarily involved, and can be conclusively determined; they may not, therefore, determine speculative and abstract questions of law, or lay down rules for the future conduct of individuals in their business and social relations.

Courts of equity will not entertain jurisdiction of cases where there is an adequate remedy at law unless for the purpose of preventing serious and irreparable injury.

Defendant was organized for the general purpose of cultivating "the art of music in all its branches, and the promotion of good feeling and friendly

intercourse among the members of the profession, and the relief of such of their members as shall be unfortunate." It had power, by its charter, to make and establish by-laws, rules and regulations, not inconsistent with any existing law, as was judged proper, and, among other things, to impose, remit and reduce fines, and to suspend or expel " such members as shall refuse or neglect to comply with the said by-laws and regulations." (Chap. 168, Laws of 1864; chap. 321, Laws of 1878.) One of its by-laws provides " that it shall be the duty of every member to refuse to perform in any orchestra or band in which any person or persons are engaged who are not members in good standing, excepting organists and directors of musical societies and members of traveling companies, and, with such for no longer a period than four weeks; and any member who shall have violated this section shall be deemed to have committed a breach of good faith and fair dealing between the members of this society, and shall be punished according to the by-laws," *i. e.,* by fines amounting in the aggregate to $30, which, if unpaid, the society had no means of enforcing. Plaintiff, who was a member of said society, was served with a notice to attend a directors' meeting to show cause why he should not be fined for violations of said by-law. Plaintiff thereupon brought this action to have said by-law declared illegal and void, and to restrain the directors from enforcing the same against plaintiff. *Held,* that the action was not maintainable, as a remedy at law exists to protect him from the injury threatened, if inflicted, and the enforcement of the by-law would not subject him to irreparable injury, so as to entitle him to a preventive remedy.

Also, *held,* that the action was prematurely brought, as plaintiff had not exhausted his remedy within the society against the infliction of an unjust punishment.

*Thomas* v. *M. M. P. Union* (49 Hun, 171), reversed.

(Argued March 4. 1890 ; decided April 15, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 19, 1888, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, a member of the society defendant, to have certain of its by-laws declared void, and to restrain its directors from enforcing the same against plaintiff.

The material facts are stated in the opinion.

*Horatio C. King* for appellant. The by-laws in their legal operative force, regulate the matter of association as between

the members only; they do not purport to interfere with freedom of action outside of the organization. (*M. S. Assn. v. Walsh*, 2 Daly, 1.) The defendant had the discretionary power to make the by-laws. (*People v. Fisher*, 14 Wend. 9; *People v. Wilzig*, 4 N. Y. Cr. Rep. 413; Penal Code, § 170; *Williams v. N. Y. C. R. R. Co.*, 18 Barb. 222; *M. S. Assn. v. Walsh*, 2 Daly, 1; *Walker v. Deveraux*, 4 Paige, 230; *People v. Com. Council*, 78 N. Y. 33; *King v. Mayer*, 3 B. & Ad. 255, 271; *Martin v. Mott*, 12 Wheat. 19; *U. S. v. Speed*, 8 Wall. 77; *U. S. v. Wright*, 11 id. 648; *People v. Leonard*, 74 N. Y. 443; *Schanck v. Mayor*, 69 id. 444; *Fudickar v. G. Co.*, 62 id. 392, 399; *Morgan v. Binghamton*, 102 id. 500.) By-laws should not be scrutinized for the purpose of adjudging them void; they should receive a liberal and reasonable construction. (*P. Co. v. P. Co.*, 6 Bing. N. C. 314; *In re Dunkerson*, 4 Biss. 227; *Ormes v. Dauchy*, 82 N. Y. 443; *Curtis v. Gokey*, 68 id. 300, 304; *L. S. Assn. v. Levy*, 3 N. Y. S. R. 514; 22 J. & S. 32.) It was error to decree the entire by-laws, section 1 and 2 of article 3, to be absolutely void, if any part was unquestionably valid. (*In re Middleton*, 82 N. Y. 196, 203; *Rogers v. Jones*, 1 Wend. 237; *Amesbury v. Ins. Co.*, 6 Gray, 596; *Adley v. Whitestable*, 17 Ves. 316; *Rex v. Tappenden*, 3 East. 186; Angell & Ames on Corp. § 342; *Curtis v. Gokey*, 68 N. Y. 300; *D. M. Co. v. Roeber*, 35 Hun, 421, 427, 428; *Collins v. Yorke*, 33 Eng. Rep. 463; *O. S. N. Co. v. Winsor*, 20 Wall. 66; Bishop on Cont. § 576; 2 Pars. on Cont. [7th ed.] 747; *L. S. Assn. v. Levy*, 3 N. Y. S. R. 514.) The testimony admitted under defendant's objection and exception shows the singular anomaly of the illegality of a contract, or by-law attempted to be established by proof of inconvenience to the plaintiff and others in its consequences, and the statutes of this state construed and limited by plaintiff's theories and opinions. (*Commonwealth v. Worcester*, 3 Pick. 462; *Williams v. N. Y. C. R. R. Co.*, 18 Barb. 222.) Plaintiff is not entitled to relief in equity by injunction. (*People v. Warren*, 64 N. Y. 167, 170; *Blake v. City of Brooklyn*, 26 Barb. 301, 303;

*Davis* v. *A. Society,* 6 Daly, 81, 91 ; *Wallack* v. *Society,* 67 N. Y. 21, 29 ; *Savage* v. *Allen,* 54 id. 458 ; *Gallatin* v. *O. Bk.,* 16 How. Pr. 253 ; *Shrewsbury* v. *S. V. R. R. Co.,* 21 Eng. L. & Eq. 628, 636 ; *McHenry* v. *Jewett,* 90 N. Y. 63 ; *Cowper* v. *Mapes,* 6 Johns. Ch. 46 ; *N. Y. P. Co.* v. *Fitch,* 1 Paige, 98 ; High on Inj. §§ 22, 34, 35 ; *La Fond* v. *Deems,* 81 N. Y. 508, 514 ; *Poultney* v. *Backman,* 31 Hun, 49 ; *Harrington* v. *Association,* 37 Alb. L. J. 438 ; *Cowper* v. *Theall,* 40 Hun, 522 ; *White* v. *Brownell,* 2 Daly, 329, 340, 341 ; *Commonwealth* v. *P. B. Society,* 8 W. &. S. 247 ; *Adley* v. *W. Co.,* 17 Ves. 323 ; Angell & Ames, § 342 ; *Morgan* v. *Binghamton,* 102 N. Y. 500 ; *Rochester* v. *Erickson,* 46 Barb. 92 ; *People* v. *C. Board,* 55 N. Y. 397 ; *Williams* v. *N. Y. C. R. R. Co.,* 18 Barb. 222 ; *Swett* v. *City of Troy,* 12 Abb. [N. S.] 100 ; *Bouton* v. *City of Brooklyn,* 15 Barb. 375 ; *Phenix* v. *Comrs. of Emigration,* 12 How. Pr. 1 ; High on Inj. § 786 ; *S. C. Bank* v. *King,* 44 N. Y. 87, 94 ; *Bennett* v. *A. A. Union,* 5 Sandf. 614, 631 ; *Materne* v. *Horwitz,* 2 Cent. Rep. 472 ; *Hurst* v. *N. Y. P. Exch.,* 180 N. Y. 605.)

*Eustace Conway* for respondent. The by-laws, sections 1 and 2, article 3, and section 2, article 11, so far as it relates thereto, are invalid and illegal as inconsistent with the incorporating statutes. (*D. Co.* v. *C. R. R. Co.,* 16 N. J. Eq. 321 ; 2 Schw. [N. P.] 1144 ; *F. Co.* v. *Hyde Park,* 97 U. S. 666 ; *Tyng* v. *C. W. Co.,* 58 N. Y. 314 ; *People* v. *U. Ins. Co.,* 15 Johns. 358 ; *Calder Co.* v. *Pilling,* 14 M. & W. 75 ; *Thomas* v. *R. R. Co.,* 101 U. S. 71, 82 ; *N. Bank* v. *Jones,* 95 N. Y. 121 ; *Ashbury R. Co.* v. *Riche,* L. R. [7 Eq. & E. App.] 653 ; *In re Butchers' Ben. Assn.,* 35 Penn. St. 151 ; *Dunham* v. *Trustees,* 5 Cow. 462 ; *People* v. *M. Society,* 24 Barb. 570, 574, 575 ; Angell & Ames on Corp. 268 ; 2 Kent's Comm. 296 ; Grant, 76 ; *Billings* v. *P. Bank,* 4 Pet. 521 ; *C. R. Bridge* v. *W. Bridge,* 11 id. 420 ; *Cartan* v. *Society,* 3 Daly, 20 ; *Coyle* v. *Society,* 17 Wkly. Dig. 17 ; *Gundlach* v. *Assn.,* 4 Hun, 339 ; *McCabe* v. *Society,* 24 id. 149 ; *State* v. *M. Exch.,* 2 Mo. App. 96 ; *Mayor* v. *Thorne,* 6 Paige, 263 ; Morawetz on Corp.

1014–1016.) The by-laws are also inconsistent with the
United States and state Constitutions. (Angell & Ames on
Corp. §§ 322–336; *People* v. *Marx,* 99 N. Y. 377; *In re
Jacobs,* 98 id. 98; *People* v. *M. Society,* 24 Barb. 570; *People*
v. *Gilson,* 109 N. Y. 399; *Grain Elevator Cases,* N. Y. L.
Jour. Oct. 28, Nov. 1, 1889.) The by-laws are inconsistent
with the statutes of the state. (Penal Code, § 653; *People* v.
*Lenhardt,* 4 N. Y. Cr. Rep. 317; *M. Co.* v. *B. Co.,* 68 Penn.
St. 182.) The by-laws are unreasonable, oppressive, in
restraint of trade and against public policy. (1 Mill. Prin.
Pol. Econ. 421, 491, 546, 550, 556; Walker's Cyclopedia
Pol. Science, 1080; Sedgwick's Prin. Pol. Econ. 188, 335,
408; State Const. art. 1, § 17; *Mitchell* v. *Reynolds,* 1 P.
Wms. 161; 8 Coke, 121; 11 id. 84; *Hilton* v. *Eckersley,* 24
L. J. [Q. B.] 1; 25 id. 199, *Chappel* v. *Brockway,* 21 Wend.
157; *Laurence* v. *Kidder,* 16 Barb. 641; *Hesketh* v. *Brad-
dock,* 3 Burr. 1856; *Root* v. *L. I. R. R. Co.,* 114 N. Y. 304;
*D., etc., Co.* v. *A., etc., Co.,* 15 Fed. Rep. 650; *Crawford* v.
*Wick,* 18 Ohio St. 190; *Garret* v. *Taylor,* 3 Croke, 567;
*Proctor* v. *Sargent,* 2 M. & G. 37; *Mallam* v. *May,* 11 M.
& W. 665; *Chesman* v *Nainby,* 2 Ld. Raym. 1456; *In re
Jacobs,* 98 N. Y. 98; *D. M. Co.* v. *Roeber,* 106 id. 482; *P. Co.*
v. *Sampson,* L. R. [19 Eq. Cas.] 462; *Leather Co.* v. *Lorsont,* 9
Eq. 353; *Leslie* v. *Lorillard,* 110 N. Y. 533; *Salt Co.* v. *Guthrie,*
35 Ohio St. 672; *Stanton* v. *Allen,* 5 Den. 434; *Hooker* v.
*Vandewater,* 4 id. 353; *I. B. Co.* v. *Kock,* 14 La. Ann. 164
*Clancey* v. *O. Co.,* 62 Barb. 395; *S. Bank* v. *King,* 44 N. Y.
87; *M. Co.* v. *B. Co.,* 68 Penn. St. 182; *Welter* v. *Hersee,* 10
Hun, 431; 74 N. Y. 609; *Arnot* v. *P. Co.,* 68 id. 558; *M.
S. S. Co.* v. *McGregor,* L. R. [21 Q. B.] 553; *People* v. *Gill-
son,* 109 N. Y. 399; *People* v. *S. R. Co.,* 16 Civ. Pro. Rep. 1;
*Mayor, etc.,* v *Thorne,* 6 Paige, 263; *Craft* v. *McConoughy,*
79 Ill. 346; *People* v. *M. Society,* 24 Barb. 570; *Horner* v.
*Graves,* 7 Bing. 743.) This suit is well brought by plaintiff
if the by-laws are invalid. (*Leslie* v. *Lorillard,* 110 N. Y.
432, 535; *Hawes* v *Oakland,* 104 U. S. 450; Green's Brice,
643 *et seq.* 77; *Manderson* v. *O. Bank,* 28 Penn. St. 379,

*Rendall* v. *C. P. Co.*, 4 K. & J. 326; *Hoole* v. *G. W. R. R.*, L. R. [3 App. Cas.] 262; *Pickering* v. *Stephenson*, L. R. [14 Eq.] 322; Morawetz on Corp. § 273; Kerr on Injunc. 505; *Stewart* v. *E. Co.*, 17 Minn. 372; High on Injunc. §§ 1187, 1194, 1200; *Colles* v. *T. Co.* 11 Hun, 397; *Emperor* v. *Day*, 3 D., F. & J. 217; *Champlin* v. *Mayor, etc.*, 3 Paige, 573; *S. Co.* v. *Riley*, L. R. [6 Eq. Cas.] 551; *T. Co.* v. *Massam*, 6 Ch. Div. 582; *Watson* v. *Sutherland*, 5 Wall. 74; *Riding* v. *Smith*, L. R. [1 Exch. Div.] 93; *Dixon* v. *Holder*, L. R. [7 Eq. Cas.] 488; *Donnell* v. *Bennett*, L. R. [22 Ch. Div.] 835; *People* v. *C. Board*, 55 N. Y. 390; *Leech* v. *Harris*, 2 Brews. 571; *Garret* v. *Taylor*, 3 Croke, 567; *Bissell* v. *M. R. R. Co.*, 22 N. Y. 258; *W. A. Co.* v. *Barlow*, 63 id. 62; *Woodruff* v. *E. R. Co.*, 93 id. 609; *President* v. *R. R. Co.*, 7 Lans. 241; Taylor on Corp. 272; *Stetson* v. *Kempton*, 13 Mass. 202; *Ins. Co.* v. *Connor*, 17 Penn. St. 136; Angell & Ames on Corp. [3d ed.] 338; 2 D. & S. 514; Cook on Stockholders, § 624.) The objections to testimony are not, in any case where an exception was taken, specific, but merely to the lines of questioning, and are not available. (*Daly* v. *Byrne*, 77 N. Y. 187.)

Ruger, Ch. J. The remedy afforded for the restraint and punishment of corporations for illegal conduct in the exercise of privileges or franchises not conferred upon them by law, is through an action by the attorney-general to suspend their functions or annul their charters. (Code Civ. Pro. § 1798.)

Individuals who, by unlawful combinations, seek to interfere with the trade, business or occupation of others, with a view of injuring or embarrassing them in the prosecution of such trade or business are subject to the penalties of the criminal law and become liable to criminal prosecution on behalf of the people. (Penal Code, § 168.) These are the only modes of redress open to parties, generally, for injuries occasioned to them through the voluntary combination of others engaged in similar employments, with a view of influencing and controlling the general conduct and management of such trade or

employment. Of course, actions may be maintained by indi-
vidual members of a corporation against it, who have been
injured in their property rights by the unlawful action of such
corporation, for the purpose of redressing such injuries.
Aside from actions of this character, the members of corpora-
tions generally cannot maintain actions against corporate bodies
for the purpose of influencing or controlling their corporate
action. However desirable it may be for the members of
financial, industrial and social organizations to be acquainted
with the legal force and effect of rules and by-laws adopted
by such societies, for the purpose of regulating the conduct and
action of its members, it furnishes no reason why courts should
entertain jurisdiction of actions, either legal or equitable,
brought for the mere purpose of obtaining such information,
whether they be instituted in behalf of the member bringing
the action alone, or in that of all the associates in the corpora-
tion. It is only when some injury has been inflicted on the
person, or some right of property has been invaded, destroyed,
or prejudiced by the action of such corporation, that a mem-
ber is entitled to maintain an action in the courts for redress
or protection. Courts do not sit for the purpose of determin-
ing speculative and abstract questions of law, or laying down
rules for the future conduct of individuals in their business
and social relations, but are confined in their judicial action to
real controversies wherein the legal rights of parties are neces-
sarily involved and can be conclusively determined. (*Bigelow*
v. *Hartford Bridge Co.*, 14 Conn. 565.) It is said in that
case: "It is obviously not fit that the power of the court
should be invoked in this form for every theoretical or specu-
lative violation of one's rights."

Legal actions are designed to afford redress for injuries
already inflicted and rights of persons or property actually
invaded. Equitable actions, however, are not only remedial
in their nature, but may also be brought for the purpose of
restraining the infliction of contemplated wrongs or injuries
and the prevention of threatened illegal action, which may be
the occasion of serious injury to others. The creation of equity

jurisdiction arose out of the inability of courts of law, through the inflexibility of their rules, and want of power to adapt judgments to the special circumstances of cases, to reach and do complete justice in all cases. It is, therefore, a cardinal rule of equity that it will not entertain jurisdiction of cases where there is an adequate remedy at law, or grant relief, unless for the purpose of preventing serious and irreparable injury. (*McHenry* v. *Jewett*, 90 N. Y. 58; *People* v. *Canal Bd.*, 55 id. 394.) These principles are elementary and lie at the foundation of all equitable jurisdiction. Equity, therefore, interferes in the transactions of men by preventive measures only when irreparable injury is threatened, and the law does not afford an adequate remedy for the contemplated wrong. As was said by Judge ANDREWS in *McHenry* v. *Jewett* (90 N. Y. 62): "It is not sufficient to authorize the remedy by injunction that a violation of a naked legal right of property is threatened. There must be some special ground of jurisdiction, and where an injunction is the final relief sought, facts which entitle the plaintiff to this remedy must be averred in the complaint and established on the hearing."

We think the judgments of the courts below in this case have proceeded in disregard of the elementary rules referred to. We have looked in vain through the findings of the trial court, and the evidence given, to discover any grounds, aside from the alleged invalidity of the by-laws, to which the equitable jurisdiction asserted, can be referred. A condition of things is indeed indicated by the findings, from which it may be inferred that the plaintiff will be embarrassed in the conduct of his business on account of non-membership in the union, through the action of some of his employes and artists in withdrawing from his employment. Embarrassments in business, however, which arise from the action of those engaged in, or connected with a similar business, although influenced by obligations assumed by them voluntarily in becoming members of societies, or by representations made to them by individual members of said organizations generally, give no right of action to persons so embarrassed, either against

the societies or the individuals so influenced.   The action of the employes so referred to is not shown to be the consequence of the threatened proceedings against the plaintiff, or to be dictated by any other influence than that of a voluntary determination by them adopted in reference to the management and control of their own business interests.

A brief reference to the undisputed facts in the case shows that the plaintiff's anticipation of injury from the defendant's action is conjectural and based upon insufficient grounds. The defendant was a corporation organized for the general purpose of cultivating " the art of music in all its branches, and the promotion of good feeling and friendly intercourse among the members of the profession, and the relief of such of their members as shall be unfortunate."   They had power to make and establish by-laws, rules and regulations, not inconsistent with any existing law, as they shall judge proper, and, among other things, to impose, remit and reduce fines, and to suspend or expel " such members as shall refuse or neglect to comply with the said by-laws and regulations."   (Chap. 168, Laws of 1864; Chap. 321, Laws of 1878.)

The plaintiff, being a member of such corporation, brought this action to restrain the defendant from enforcing against him certain by-laws of the corporation.   The action, confessedly, is based upon the rights given to him as a member of the corporation, and he thereby seeks to retain his membership while endeavoring to exempt himself from the obligations of the rules and by-laws, which he voluntarily assumed in joining the society.   His complaint is founded upon the theory that certain by-laws are invalid and contrary to law and he seeks to have them declared void, as he alleges, for his own protection and in the general interests of the corporation. The only by-laws legally involved in the action read as follows : Art. 3, sec. 1. — " It shall be the duty of every member to refuse to perform in any orchestra or band in which any person or persons are engaged who are not members in good standing, excepting organists and directors of musical societies and members of traveling companies, and, with such, for no

longer a period than four weeks; and any member who shall have violated this section shall be deemed to have committed a breach of good faith and fair dealing between the members of this society, and shall be punished according to section 2 of article 11." That section provides that an offender "shall, after a fair and impartial investigation by the board of directors, if found guilty, be fined for for the first offense, $10; for the second offense, $20, and for the third offense be expelled by the board of directors." The plaintiff was the director of a musical society and a member of a traveling company, and, therefore, exempt from the operation of the by-law, at least for a limited time. He was served November 9, 1885, with a notice of which the following is a copy, viz:

"New York, *Nov.* 9, 1885.

"Sir — You are requested to attend a meeting of the board of directors, to be held at Town Hall, 66 East Fourth street, New York, on Friday, the 13th inst., at 10 o'clock A. M., to show cause why you should not be fined for two violations of section 1, article 3 of the by-laws, November 3d and 5th.

"By order.  M. PAPST, *Secretary.*"

This notice constitutes the only legal evidence of any intended action by the corporation. This suit was commenced on the 10th day of November, 1885, and demands judgment that said by-laws be declared illegal and void, and that said board of directors may be perpetually enjoined and restrained from enforcing the same against the said plaintiff, and against the members of his orchestral company, who are also members of the said defendant union.

We do not deem it necessary to consider the question of the validity of the by-laws, as they are not necessarily involved in the determination of the action. We are met, *in limine,* by the objection on the part of the defendant, that no case has been made bringing the action within settled principles controlling courts in the exercise of their equitable jurisdiction over litigants, and there seems to be no answer to the objection. It is not claimed but that the directors were pro-

ceeding in strict accordance with the powers conferred upon them by the by-laws of the corporation, to investigate and determine the questions whether the plaintiff had been guilty of the offense charged, and, if so, the punishment which should be imposed for the offense. So far as the contract rights of the plaintiff are concerned he admits the jurisdiction of the board of directors, under their charter and by-laws, to try and determine the charge made against him, but claims that he may, in advance of any action on their part, procure an adjudication by the court as to the validity of the by-laws. As we have heretofore seen, he may raise this question, provided its enforcement subjects him to irreparable injury and other adequate means of redress are not open to him, but in such event only.

It is claimed by the appellant that the action is prematurely brought, in as much as the plaintiff has not exhausted his remedies within the society against the infliction of an unjust punishment, and that his remedy at law is amply sufficient to protect him from the injury threatened, and we think this claim is well founded. It becomes necessary, therefore, to see just what it was the corporation proposed to do to the plaintiff. The evidence of the contemplated action is undisputed and consists solely of the proceedings indicated by the letter summoning the plaintiff for trial before the board of directors, as was found by the trial court. He is thereby notified of an intention to try him for two offenses only, the extreme penalty of which, if found guilty, is the imposition of fines, amounting in the aggregate to $30. This is the extent of the offending proved on the part of the corporation against the plaintiff. There is no question raised, either on the proof or findings, as to the expulsion of the plaintiff from the organization, or any question which looks beyond the exaction of the fines imposed. If, therefore, the plaintiff is to be injured at all by the action of the corporation it is by the requirement to pay these fines. How is he injured by their imposition? No process is provided by which the corporation can collect them, and their payment, if made at all,

must necessarily be by the voluntary action of the plaintiff. If their collection is attempted by legal proceedings, the plaintiff has the same defense to an action therefor that he now seeks to use in maintaining this action. It may be claimed that his neglect to pay the fines subjects him to prosecution for expulsion from the corporation, but it is sufficient to say that the proof does not show any intent by the corporation to expel him, and he is entitled to resort to the remedy by injunction only when the necessity for it clearly appears. The plaintiff volun· tarily became a member of the defendant society under a pledge to obey its rules and regulations, and so long as he voluntarily continues such member, is bound by them, unless he is subjected to some legal injury for which he has no other redress but an action. It affords him no legal ground of complaint against the corporation, that others are members thereof and voluntarily obey its rules and regulations, although such action requires them to refuse, under certain conditions, to transact business with the plaintiff.

We are, therefore, of the opinion that the only relief which could, under any circumstances, be granted to the plaintiff in this action, being a judgment restraining the defendant from prosecuting its charges for violation of the by-laws, and as this involves the imposition of a penalty only which the corporation has no means of enforcing, no ground for equitable relief has been established.

It also appears, in addition to the absence of any serious injury to the plaintiff's rights which might follow the infliction of the penalties, that he has not availed himself of the means afforded by the rules of the organization to avoid them. He could have urged to the Board the invalidity of the by-laws; his ignorance of them; his exemption therefrom as the manager of an orchestra in defense of the charge, or in palliation thereof, and the directors had power to acquit him and remit, or reduce the fines. Without waiting to see what the action of the board might be, he assumes that he will be found guilty, his defense disregarded, his excuses ignored, and that the punishment will be inflicted

The case is quite barren of evidence tending to show that any injury is reasonably likely to happen to him.  We have not been referred to any authorities holding that an action in equity will be sustained under such circumstances.  Even in the case of offenses involving the penalty of expulsion from similar societies, actions have been maintained to enjoin such societies from denying the privileges of membership to a party expelled, only after action by the society expelling such member has been had.  No case has been cited where an injunction has been granted in anticipation of such an event, and, we think, within settled rules, that suit in equity for such a purpose is not maintainable.  (*Hurst* v. *N. Y. Produce Exchange*, 100 N. Y. 605; *Fisher* v. *Keane*, L. R. [11 Ch. Div.] 353; *Labouchere* v. *Wharncliffe*, L. R. [13 Ch. Div.] 346; *Gregg* v. *Mass. Medical Society*, 111 Mass. 194; *People* v. *Medical Society*, 24 Barb. 570; *Wolfe* v. *Burke*, 56 N. Y. 118; *West* v. *Mayor, etc.*, 10 Paige, 539.)

We practically held in the *Hurst Case* that the remedy by injunction could not lie, as no violation of plaintiff's rights had happened, or may ever happen, and no injury thereto is threatened in such a sense as justifies a preventive remedy, and the rule there adopted must govern this case.

The judgments of the courts below should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.