(34 Misc. Rep. 556.)

### BROWN v. SUPREME COURT I. O. F.

(Supreme Court, Trial Term, Erie County. April, 1901.)

**1. BENEFIT INSURANCE COMPANY—SUSPENSION OF MEMBER.**

The constitution of a benefit insurance order authorized suspension of a subordinate court for failure to make to the supreme court of the order the payments required by the constitution, and declared that payments made to an officer of a subordinate court should be received by him as an agent of the member who made the payment. *Held*, that a member in good standing with his own court could not be suspended by the supreme court of the order because of the failure of the financial secretary of his lodge to make the payment required by the constitution to the supreme court.

**2. SAME—RELIEF IN COURT OF LAW.**

Where the constitution of an order provides that no member shall proceed in the courts against the supreme court of the order until he has exhausted all remedies given by the constitution of the order, it does not apply where the question at issue is strictly one of law, and capable of final decision by courts of law.

**3. SAME.**

A member of a benefit insurance order was suspended for failure of the court of which he was a member to make payments to the supreme court of the order. An appeal from the suspension would have laid to the supreme court of such order, presided over by the person who had suspended the subordinate court of the member, which supreme court of the order had already made return to a writ of mandamus declaring the member incapable of reinstatement because of physical disability. An appeal to the said supreme court of the order would compel the relator to appear before that body in California. *Held*, that an application to a state court would lie to enforce the right of the member to reinstatement.

Application by the people, on the relation of Lesser Brown, for a writ of mandamus to the Supreme Court of the Independent Order of Foresters. Writ granted.

David Ruslander, for petitioner.

O. P. Stockwell, for respondent.

HOOKER, J. This case is submitted to the court, without a jury, on a stipulated statement of facts. It appears that the relator, Brown, was on the last day of September, 1900, a member in good standing of the court Montefiore, a subordinate lodge of the de-

fendant, the Supreme Court of the Independent Order of Foresters, and at that time was insured with this defendant in the sum of $1,000; that all his dues and assessments as a member of the order and as the holder of such insurance, which, by the constitution and general laws of the defendant, the relator was compelled to pay, were, up to the last day of September, 1900, duly and properly paid by him to the financial secretary of his subordinate lodge. Section 147, subd. 2, of the constitution and general laws of the defendant provides that:

"The supreme court shall in no wise be held accountable for any dereliction of duty on the part of the financial secretary or of any other officer of a court, and all payments, for whatsoever purpose made, to any officer of a court, shall be received by such officer as agent of the member making the payment."

### Subdivision 3 of the same section provides that:

"No payments of any fees, assessments, dues, taxes, fines or other demands of the order whatsoever made by any member to any officer or member of a court shall be deemed to have been made to the supreme court * * * unless made within the time and under the conditions required by the constitution and laws of the order and until the money is actually transmitted to the proper officer of the supreme court * * * by postal order, money order, or by express money order or by bank draft or is otherwise actually paid to the supreme court."

### Section 245, subd. 1, provides that:

"On the first week day of each and every month the financial secretary shall receive from the treasurer, and shall immediately transmit to the supreme secretary, the funds sufficient to cover the following items." (And here are recited a number of items, among which is that of dues and assessments of members similar to those paid by the relator to his financial secretary prior to the 30th day of September, 1900.)

Section 246, subd. 1, provides that the financial secretary of subordinate lodges shall, on the 1st day of each month, except in January and July, make out certain reports.

### Section 247 provides that:

"Any court not forwarding at the beginning of each month the proper report and the remittance as required by sections 246, * * * and continuing in such default till the third day of the month, may be suspended by the supreme chief ranger; but, if not so suspended, and it continues to be in default until the end of the month, then it shall ipso facto stand suspended on the first day of the succeeding month."

### Section 248 provides that:

"Any court suspended for nonreport or nonremittance as provided in section 247 may be reinstated [by making certain payments], and by each member seeking reinstatement, presenting a certificate of good health on form No. 4, or passing the medical board, if required by the executive council or by the supreme chief ranger."

The constitution and laws of the order also require payments of dues, assessments, and the like by members to be made to the financial secretary of the subordinate lodge, and to him alone.

The financial secretary of relator's court failed to forward at the beginning of the month of September, 1900, the report and remittance pursuant to section 247, and such default continued until after the 1st day of October of the same year. The defendant claims that the relator and his entire court were suspended ipso facto on

the last-named day, according to the provision of that section. On or about the 15th day of October, 1900, the relator duly made application for reinstatement into the defendant's order in the manner prescribed; and the defendant, in its return, alleges, on this particular, that, owing to the relator's physical condition, he was wholly unable to comply with the provisions of the said constitution and laws, and his application for such reinstatement was therefore rejected and disallowed by the supreme chief ranger of the defendant. It appears that he was examined by the defendant's medical board, and was then, and continued to remain, up to the time of the issuance of the writ herein, suffering from the effects of a surgical operation performed prior to October 1, 1900, and after his admission to the order. He took no appeal from the decision of the supreme chief ranger. The constitution and laws of the order also provide that appeals in all matters relating to the general laws shall be from the court deputy to the supreme chief ranger, from the supreme chief ranger to the executive council, and from the executive council to the supreme court; and section 213 says that no member of the order shall be entitled to bring any civil action or other legal proceeding against the supreme court until he shall have exhausted all the remedies provided in the constitution and laws of the order by appeals and otherwise.

Upon these facts two questions of law arise, whose determination is necessary to reach a conclusion in this proceeding. The first is whether the financial secretary of the subordinate lodge was the agent of the relator or the defendant in the matter of the payment of the relator's dues and assessments. If he was the agent of the defendant, the payment by the relator to him was a payment to the Supreme Court of the Independent Order of Foresters, and the suspension of the relator was improper. The exact question does not seem to have been passed upon by the courts of this state. The court of appeals, in Rohrbach v. Insurance Co., 62 N. Y. 47, 20 Am. Rep. 451, and in Alexander v. Same, 66 N. Y. 464, 23 Am. Rep. 76, reluctantly held that, where the insured had contracted that the person who had procured the insurance should be deemed his agent, he must abide by his agreement, and suffer for the wrong or error of such person who misstated the declarations of the assured in the application for the insurance. The court limited this doctrine in Whited v. Insurance Co., 76 N. Y. 415, 32 Am. Rep. 330, to the acts performed by the agent in connection with the original insurance. In this case Judge Folger wrote a strong opinion, holding that, in spite of the agency clause in the agreement, the manner of the dealing and the transactions must be the guide in determining for whom the agent was acting, and held that the agent was that of the insurance company. This case was followed in Patridge v. Insurance Co., 17 Hun, 95. In other jurisdictions, however, the precise question has been determined; and it has uniformly been held, except in Massachusetts, that in fraternal insurance organizations the officers of the subordinate or inferior chapters or lodges whose duty it was to receive and transmit dues and assessments are the agents of the order at large, in face of clauses in their respective constitutions

and laws similar to section 147, subd. 2, of the defendant's constitution in this case. See Murphy v. Sons of Jacob, 77 Miss. 830, 27 South. 624; Supreme Tribe of Ben Hur v. Hall, 24 Ind. App. 316, 56 N. E. 780; Knights of Pythias v. Withers, 59 U. S. App. 177, 32 C. C. A. 182, 89 Fed. 160; Id., 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762. Mr. Justice Brown, for the supreme court of the United States, in the last case, has written an exhaustive and able opinion, which so clearly treats the questions involved, and reaches so eminently fair and just a conclusion, that we cannot do otherwise than follow it. The question of agency was not up in Campbell v. Knights of Pythias, 168 Mass. 397, 47 N. E. 109; for, at page 399, 168 Mass., and page 110, 47 N. E., it appears that Campbell admitted that a suspension of membership and forfeiture occurred by reason of the board of control not having received the February dues. This discussion leads to the conclusion that the attempted suspension of Brown, the relator, was improper and void, and that, by reason of the failure of the financial secretary of his lodge to remit to the defendant during September, 1900, he did not cease to be entitled to the advantages of his membership in the order.

But the defendant makes the contention (which raises the second question in this case) that, inasmuch as the relator, when he was admitted to the order, agreed to be bound by its constitution and laws, he cannot maintain this proceeding, on account of the provisions of section 213, quoted above; there having been no appeal taken by him from the decision of the supreme chief ranger denying his application for reinstatement. The law is well established that the rules and regulations of organizations of this character must be reasonable, to be binding; and the courts of this state have held that those who have grievances should be required to resort to the remedies for redress provided by the rules of such orders. The case in hand should be distinguished from those which hold that doctrine. The leading case is Lafond v. Deems, 81 N. Y. 507, and was an action in equity to dissolve the benevolent and fraternal order because of a division of the order into factions, the hostile feelings of the members towards one another, and the employment of harsh language in their meetings. The court of appeals held that, under such circumstances, there having been had no resort to the remedies in the order, no action lies, and adds, at page 515 of the opinion, "No wrongs prevail which cannot be remedied." In White v. Brownell, 2 Daly, 329, the association was organized for the transaction of business which could be carried on by means of such an association only where there was the utmost confidence between the members. The plaintiff was expelled on account of alleged misconduct in his business dealings with another member. In Thomas v. Musical Mut. Protective Union, 121 N. Y. 45, 24 N. E. 24, 8 L. R. A. 175, the plaintiff was claimed to have done certain things prejudicial to the defendant and the purposes for which it was organized, and was expelled. The questions presented in these three cases were clearly in the nature of breaches of internal regulations for the good of the association, while the case at bar presents the clear-cut legal question whether the financial secretary was

the agent of the relator or the defendant. In either of the three cases cited it was proper and fitting, and, as they hold, necessary, that the internal appellate tribunals pass upon the questions raised, before resort is had to the civil courts; and the trend of the law seems to be that, in the absence of irregular practice or fraud, the decisions of such tribunals would have been final in such cases. This case, however, presents an entirely different situation. There was a proposition of law to be determined, and the decisions of hosts of executive councils and supreme courts of this defendant could not alter the law of agency. It is unreasonable that the rules of such an order should compel appeals through a channel of tribunals, where the question involved is one solely of law, and where vested rights are in the balance. If such tribunals mistake the law, their decisions are wholly worthless, and it is useless in such cases to have resort to them, and this worthlessness and uselessness is the reason that such regulations are unreasonable. I am aware that Poultney v. Bachman, 31 Hun, 49, seems to hold the contrary; but that case is based wholly upon the authority of Lafond v. Deems, supra, and White v. Brownell, supra,—two cases which are, as has been shown, distinguishable from the Poultney Case and this case. In addition to that, the court handing down the decision there held, first, that the refusal of the defendant and his lodge to pay the plaintiff the moneys claimed was proper and lawful, and it seemed unnecessary to decide any further question. Johansen v. Blume, 53 App. Div. 526, 65 N. Y. Supp. 987, lately decided in this department, seems, also, to hold a contrary view; but the learned justice writing the opinion placed the decision of this point upon the authority of Lafond v. Deems, Thomas v. Musical Mut. Protection Union, and Poultney v. Bachman, supra, and section 111 of Niblack on Mutual Benefit Associations, which is nothing more than an excellent paraphrase of page 54 of the opinion in the Poultney Case. In the Johansen Case, it should be noted as well that the court also decided that the action of the defendant lodge was proper, and the same conclusion would have been reached if this question of the necessity of prosecuting internal appeals had not been noticed. There is another ground, equally important, upon which all of the cases cited above, including the Poultney and Johansen Cases, should be distinguished. In each of them the decision, judgment, or ruling complained of was made by the local or subordinate body or lodge, as the case might have been, and appeals lay to higher and different bodies or officers. In this case the petition of the relator for reinstatement was denied by the supreme chief ranger of the defendant, and, as above stated, an appeal was permitted from his decision to the executive council, and thence to the supreme court. But the constitution of the defendant reveals the fact that this same supreme chief ranger was the chief executive officer of the order, vested with large powers and wide discretion; is the only salaried officer of the defendant, except the supreme secretary and supreme treasurer (section 31, subd. 1); is the chairman and principal officer of the very executive council to which an appeal must be taken from his own ruling in this case, and which meets at his call (sec-

tion 26, and section 16, subd. 9); and, more than all that, is the chairman, chief officer, and acknowledged head of the supreme court itself (sections 9, 16). There is no provision of the constitution preventing him from sitting in judgment on his own decisions in either the executive council or the supreme court, but, on the other hand, it is his duty, in common with the other members of these bodies, to decide questions properly coming before them. Such procedure is repugnant to the spirit of the fundamental law of this state. It is true that in the year 1847 Chief Judge Jewitt and Judges Ruggles, Jones, and Bronson determined, as stated in the first case decided in our court of appeals (Pierce v. Delamater, 1 N. Y. 17), to sit in review of their own decisions; but later the sovereign people took the matter in their own hands and declared that no judge or justice of the court of appeals or the appellate division shall sit in review of a decision made by him, or by any court of which he was at the time a sitting member. Const. N. Y. art. 6, § 3. It is unreasonable that the relator should be compelled to follow the improper procedure laid down in the defendant's constitution and laws.

There is a further reason why it should have been unreasonable for the relator to have been compelled to exhaust his remedies by appeal within the order in this case. This defendant was the order's court of last resort; but in its return herein it asserts positively that, owing to the relator's physical condition, he was wholly unable to comply with its constitution and laws, and his application for reinstatement was therefore denied. This admission in its pleading must be taken as binding upon it, and is a positive indicator as to what its decision would have been had the matter been taken to it upon appeal within the order. No issue of fact seems to have been raised on the application to the supreme chief ranger for reinstatement. It was admitted that the relator was suffering from the effects of an operation, and, inasmuch as the members of the executive council and the supreme court had taken oaths (which, it is to be presumed, they considered binding) to uphold the provisions of their constitution and laws, it is idle to speculate that those tribunals would have, in the absence of any issue of fact, decided otherwise than as the defendant now claims in the portion of its return just quoted. If the regulation under consideration was reasonable, and therefore valid, the omission of the relator to obtain a ruling of the court of last resort of the order is supplied in the return of that same court. It is proper in this case to look at the practical operation of the regulation requiring appeals within the order. It appears that the last session of the Supreme Court of the Independent Order of Foresters was held in the month of October, 1900, and that there will be no session of that court again until the second Tuesday of April, 1902, which will be held at Los Angeles, in the state of California. To compel this relator to wait for upward of a year before he should have the right to resort to the courts of law, and then to compel him to appear before a body in the state of California, cannot be said to be otherwise than unreasonable, in both the delay and burden of appearing or of preparing a case for

argument at a point so distant from his residence.    Let judgment be entered requiring the reinstatement of the relator, with costs.

Relator reinstated, with costs.